The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and its Honorable Court. Be seated, please. All right, the first case we're going to hear this morning is Blankenship v. Consolidation Coal Company, and I guess we start with Ms. Farabee. You're going to speak first, and then you're going to split it up. Is that what you're going to do? Correct. Okay. Good morning. May it please the Court, my name is April Farabee, and I'm here with Terrence Cook on behalf of the appellants in both the Blankenship and Graham cases. This case involves the improper and hidden disposal of hazardous waste. You start off with a provocative statement by using the word improper. Wasn't it permitted? No. I thought they got a permit from the state. This was not. They had a permit for surface land disturbance only. Didn't they get a permit to pump the water in? No. It was not for a water discharge. What was the permit for? It was to put in a pipeline across the surface of land. For what purpose? To discharge water. Well, come on. You don't think that that gave them authority to put the water in the well? I mean, we're starting off on a pretty, I didn't think that was in controversy at all. It's not covered by the Clean Water Act. They didn't go to the Clean Water. They got the permit from the state agency. And if we're going to get into that regulation, that's a very complex arrangement. You know, the state and the federal government share the responsibilities on these things. Yes. Here's the problem. There's a joint permit. Where's the permit in the record? Well, you don't need to use up your time. You can come back and let me know about it. I'll come back to that, yes. I didn't know that that was an issue in this case. You do talk about, you didn't mention the particular mine by name. But I thought there was no doubt about the fact that the consolidation had the authority to put the water in that mine. I thought you were heading toward the issue of a federally permitted release. I misunderstood your question. I'm just saying, wasn't it permitted? It was permitted. I mean, they got all they needed to do to do the function. It was permitted to allow them to put in a pipeline and to do the function. However, it wasn't a federally permitted release. Does that matter? Yes, it does. Why is that? Because CERCLA would not cover it if it was a federally permitted release. Even if it wasn't a federally permitted release, you have to show an order. I'm assuming, let me step back, I'm assuming you would concede that under the Virginia statute of limitations, you're out. You have to go under CERCLA discovery rule. Or there's another issue about the concealment of the facts, which would toll the statute of limitations. You mean they issued a public notice, and then there was a big discussion in the newspapers, and they made a public application, and they were concealing? That's not a winner either. I think you ought to stick with your good arguments. So let's go back to your opening statement. You say that there are hazardous substances, and we'll assume that that's correct. It seems like to me there's serious doubt that there's proof that there are hazardous substances under CERCLA. But the district court found that you offered no evidence, no evidence of any damage from hazardous substances, which would be a necessary predicate for a CERCLA claim. What's your response to the district court? Well, on the first issue you mentioned, there is evidence in the record that this was a hazardous substance. That's undisputed. On the second issue, can you repeat that last part? What are your damages? You've got to have damages of some form in order to make a recovery, in order to be able to claim that you can proceed under CERCLA. If you're not damaged, you don't have any right to claim under that. Plaintiffs have alleged and provided evidence in the record of state law claims for property damages. Which are? Which are trespass, nuisance, negligence. Where is your evidence? I'm not talking about allegations. District court said that you point to no evidence supporting your claim, and that you have incurred no environmental remediation costs. Is that true or false? That is false. Alright, so what's your evidence? The evidence shows that this hazardous substance was released and discharged into our client's properties. Alright, what's the damage? The damage is the interference with the right to use their properties. But CERCLA only recognizes two damages, personal injury and remediation costs. And you don't have either, right? We do not have to have an underlying CERCLA action in order to meet the elements of 96-58. I thought the cases that have addressed the same issue say that the linkage that gives CERCLA the authority to modify the state statute of limitations requires the potential for a CERCLA claim, even though it's not asserted. There is a potential for a CERCLA claim. Judge Agee was just asking if there's a potential for a CERCLA claim, what is your damage under the CERCLA claim that it was not asserted but could be? Well, there have been costs associated with going in and investigating. No remediation? There has not been any remediation. There has been costs incurred in investigating the remediation. But there's no evidence to show that, other than these discovery costs, that your clients were damaged in any way other than by a claim of naked trespass. Is that a fair statement of what the evidence is? Not necessarily. I mean, their lands are polluted. That's a damage in and of itself. They released hazardous substances into the subsurface. So if I spit in their cornfield, that's a contaminant introduced into the cornfield without a permit. Is there damage? There would technically be a trespass, yes. Well, all right. I mean, that's an extreme example. Well, of course it is. But I don't think the cases that have construed the CERCLA statute of limitations extension have said that you have to have the potential for a CERCLA claim, not a state trespass claim, a CERCLA claim. And one of the requirements for a CERCLA claim is that there be an injury, either in the nature of personal injury or remediation costs. The second question I was going to ask you is there's also a provision that said if it's permitted, it doesn't violate CERCLA. But we got off track on that, too. Well, what this case is about is the statute of limitations. Correct. That's right. Virginia statute of limitations, which you almost concede. You know we have a case like that. You've got to go to CERCLA, which gives you an extension for discovery. Correct. So you have to rely on that, right? Correct. That's what the appeal is all about. That's correct. Now, the plaintiffs in the caption live in Buchanan County. Is that correct? Not all of them. Just the second. I didn't look up the first one. The second three were a town. What was the address on the second three? One of them was here in Richmond. Richmond, okay. And the others live in Buchanan County? Yes. Albuquerque, is it? Yes. And did they live there at the time all of these events were taking place in the 90s and the 2000s? One of them did not. One of them was a truck driver on the road. One of them lived here. The other ones were working out of the area for the most part. But they all knew they had a property interest located in that county, right? I mean, there's no claim that anybody was unaware that they had a property interest. They all knew they had a property interest. Did they have a house there? Yes. And that house was their residence when they gave them an address? Yes. Well, other than the one that lived here in Richmond, yes. One of the key things I think we're missing here is the core purpose of CERCLA, and that's to remedy the improper disposal, transportation, and maintenance of hazardous waste. And there's no question that there was a release into our client's property of hazardous substances. Let me just ask you this. If I go and engage in a function that could implicate CERCLA, but I get a permit that would satisfy both the state and the feds under the law. This is hypothetical. I don't want you to fight about the current. There's no cause of action for CERCLA, is there,  If it's federally permitted, CERCLA provides that you cannot. And you're saying that a permit obtained from the state does not satisfy permitting? In other words, the feds could have come in and prosecuted with this permit in place? It doesn't sound right to me at all. It was not briefed, but I've been through this in other cases. And the statute's very complex, but they got a permit. And my question is, after having obtained this permit, could the feds have prosecuted them for violating CERCLA for putting this water into the mine? Of course they could. I mean, they can come in. They could, after a permit's issued. It depends on the permit that's issued. This is a state permit. Yes. It depends on what the permit says and what the impact of the permit is. Yes. That's what you're getting at, I think. Yes. Now, if the permit covers the activity, if the permit fairly covers it, hypothetically, can the feds bring a CERCLA claim? Yes. I think there's some kind of disconnect here. Yes, there is. How about if they get a federal permit from someplace? Could the feds then prosecute them after getting the permit? Well, the federally permitted release is defined under the statute. I'm asking you, if they got a permit to make this release, could the feds thereafter come in and pursue a CERCLA claim? No, not if they had a federal permit. So, the argument, your argument in this case has to rest on the notion that the permit did not satisfy the federal requirements. No. They didn't have a federal permit. That's my argument. I'm suggesting they may not have needed one under the statute. I don't believe a state court permit is going to allow them for surface discharge. It's going to allow them to illegally dispose of hazardous substances into the environment. But in any event, it was what, five years after the last time they injected the, what you say is the contaminated water, before you brought a lawsuit? They began. Is that right? There's a five year, at least five years, 2003 to 2008 or something? Well, yes. Yeah, 2003 to 2008. So, you'd have to, you've got to bring yourself under CERCLA, and then you've got to show that you didn't know, or reasonably didn't have to know for over five years. Yes. And Judge Jones rejected that. Yes. One other thing that I think you missed here is they started pumping this water and discharging it into our client's properties before they had a permit. They also drilled boreholes in through the mine walls that was not permitted to discharge this water into our client's properties. I don't know if that helps with your concerns. But all this was well before 2003. Yes, yes. Some of it back in the early 90s. Yes. And I believe my time is up. Is there? How do you satisfy the objective prong of the discovery? In other words, it says you either knew, and you claim you didn't know, your clients didn't know of their claim. But the second prong is the objective prong, or reasonably could not have known. Third. The objective prong, it seems to me, you have to somehow overcome the notion that newspaper publication and newspaper articles circulated in the county of Buchanan County, county-wide newspapers, didn't provide reasonable notice. Well, that newspaper was actually published, the notice was published outside the county. It was published in a county different from where the work was occurring. It was published in a county different from the appellant's properties. It was 20 miles away in another county. What was the county you're talking about? Wise? You went from Buchanan to where? What's the other county? Richlands. Pardon? Richlands. Richlands County. Tazewell, sorry. Tazewell, okay. There ain't going to be much that happens in Richlands that's not known in Grundy, and vice versa. Well, and that's also an issue, though, for a jury to decide. What about the above-ground pipe? It seems like that would have been a dead giveaway that something was going on. The pipe was not on the surface of our client's properties. The pipe went in at a different location. It went in on Buchanan's leased property, and the water went under its ground. And when they put in this almost 4 billion gallons of toxic waste into the old mining, abandoned mining complex under our client's properties, in our client's properties, that's when it filled our client's properties. They had no physical notice. Tell me about the newspaper articles. Weren't there some newspaper articles criticizing this? Not this specifically. This was not the topic. What was the topic? The topic was the discharge of water into the Levisa River, and that's what this publicity was about. There was only incidental mention of the... Was there any mention of pumping into the Beatrice Mine? In the later articles, there were, but there were few articles, and they were sparsed out over an extended period of time. I mean, this is a... And wouldn't everybody in town know about it as a result of that? I'd say it would be up for a jury to decide that, who lives in that community and who lives in that town. Now, this is an objective standard now. This is a question of laws to whether they should have known in the circumstances. The facts are not disputed about what the publication contained, where it was published, what the articles said, and where they were published. The question is, on those facts, was there objectively sufficient notice to put somebody on inquiry about whether they had a suit? How did they discover it in 2010? They were told through an attorney. Or Mrs. Graham was told through an attorney, and she informed the others. The attorney in this case? No, it was an attorney she worked for. Okay. Thank you. We'll hear now from Mr. Cook. May it please the Court, I am Terrence Cook. I'm here to address the issue specifically with regard to the injunction in this case. We did list in our pleadings as an alternative remedy, in the absence of adequate legal damages, the request for an injunction in this case. We do not believe that in our briefings in the trial court that we weighed Kind of an odd posture to say that you can be entitled to an injunction only in the alternative. It is, and certainly it reserves from a subjective standpoint the right to request, and although that issue is reserved in the pleadings themselves, it reserves to the plaintiffs, I guess, a subjective determination as to whether or not an injunction would be proceeded. That procedural issue aside, the question then becomes, what is the appropriate standard of law with regard to the issue of injunction? In order to remove these cases from the docket, obviously the Court had to address the issue of the statute of limitations, which the Court has questioned, at length with Ms. Farabee. But then in addition to that, there was this The question is if the legal action would have taken care of everything, successful legal action, they would have had to pump out all the water and remediate, pay the damages and so forth. Why isn't that adequate? Judge, with regard to what would be a successful resolution, certainly there is the existence, we believe there is the request and the existence for the possibility of legal damages. But the issue of the right to an injunction More than legal damages, it's remediation rights. In other words, everything that you complain about could be addressed through the law side of the case. Actually, I would suggest to the Court that that is not correct. There's no threat of future conduct. They're not pumping any more in there. But the water is still there. I know, but that can be remediated through the lawsuit. But the issue with regard to the injunction is there is a continuing trespass that takes place. The right of any of the consolidation to be able to use this void space is as a consequence of claiming the case. Even if there's a continuing trespass, how does that help you out to get an injunction? Because an injunction is a recognized remedy in order to prevent a continuing trespass to become a prescriptive easement. And in Virginia, you have 20 years. That would have all been avoided by the remedy in the legal case. If you would succeed in your legal case, all those issues go away. Actually, they don't go away, Your Honor. This is a situation where you may be able to recover damages, but that doesn't necessarily involve removal of the water. Remediation, you can get remediation as part of the damage. That's part of the injury. You could, but we've also specifically You could do it yourself and then charge the company. Sure. You could hire a bunch of contractors and do it all and get it from the company. The problem is, is that in this particular case, both of these plaintiffs have a very small portion of the 6,000 square acres that Beatrice Mine Complex constitutes. I understand, but they'd have standing to bring a lawsuit, wouldn't they? They would, Judge. It would be up to Consolidation Coal to figure out how to do it. Right. If you went down and removed all the water with a contractor and took care of all the problems that you claim you have, and then send the bill to Consolidation, they'd have to pay it if you were successful. I would suggest they also have standing to bring an injunction under state law, which would keep Consolidations continually trespassing. Even if you have standing, I mean, the district court went through all of the segments of what you would have to consider under Virginia law for a continuing trespass and helped you meet them. Actually, the court really didn't touch much on Virginia law. I'm looking at page 3469 in the appendix, and it sort of looks like to me it met the Virginia tests. Generally, the federal standard for injunction is articulated by eBay, and then also the Virginia statutes with regard to the enforcement of personal property rights and contract are very similar. I thought you were claiming this was a real estate. Right. It is not. You had some special entitlement under real estate law. Absolutely, there is. What is it? What case says you get that? The Levisa case, the Sneed case. Why is Levisa called? Be aware, counsel, I sat on that case, so I think I know what it says. Good. And that opinion does a good job in articulating the different standards, the dichotomy between the enforcement of injunction for personal property in the context of a contract versus the enforcement of injunction with regard to real property. When you request the court for an injunction to enforce a real property right in this context, it's deemed irreparable, the landowner is protected in his enjoyment of his property, whether it be pecuniary or sentimental. That just gives the chancellor the discretionary authority to enjoin a continuing trespass, but you still go through all the tests to determine whether or not the injunction is appropriate. For instance, in this case, Judge Jones went through and determined that the plaintiffs admitted they never attempted to use the mine voids, that the water that's in the mine now would eventually be displaced by the natural flow of water, that it would be disproportionate to require the defendants to remove the water in terms of the cost to them. And that sounds like to me all the tests the Supreme Court discussed in Levisa Cole under Virginia law. Right, and I'll specifically reference Breeden, the 2014 case of Breeden, basically articulates the same factors as in Levisa, and applying the facts in this case, as we understand it to be, using the Levisa standard, one, do they suffer irreparable injury? In the Levisa, Sneed, and Breeden case, real property interests are deemed to be irreparable. Secondly, remedies available at law such as monetary damages are inadequate. That can't be, that's just a formulaic statement. I mean, if I cut down a tree and it falls onto your property, I'm trespassing. That doesn't mean it can't be remedied. But it's not a continuing trespass. But the tree's lying on your property. Well, the tree was there before it was cut down. The tree's on my property, and I felled it, and it fell onto your property. Now, that's a trespass, right? Now, that would be the case, yes. Okay, now it's lying there, and it's a continuing trespass as long as it's there, right? Right. And that can be limited, can't it? Through an injunction, it absolutely can. An injunction. You can remove it and charge me. I could, but I could also... The property isn't irredeemable, and it's not... In other words, that could be taken care of very well without a court of equity. It could be taken care of by a court of equity through the injunction process. Only if you have an inadequate remedy at law. No. I would suggest that if you cut a tree on your property and it falls on my property, I can sue you for damages. But I can also ask for an injunction to keep the placement of that tree on my property. I may not give it to you if you say, we'll just get a contractor there and charge me with the cost of removing the tree. In this case... It's a total perfect remedy. Correct. However, I would suggest in this particular case, the co-company's right to put water or to use these void spaces comes from the original severance deed. What those rights are, are through a determinable easement. Specifically, in this case, specifically articulated in the severance deed. We believe, and those rights speak of ingress and egress, not the static storage of water. And in this case, that water continues to remain in the... Don't you have to have a cause of action to which the injunction attaches? We do have a cause of action. What's the cause of action? The cause of action would be continuing trespass. It would be an overburdening... In that case, trespass is barred by statute of limitation. It would be an overburdening of the easement. And again... In that case, is that claim the district court threw out because you brought your action beyond five years? There's a distinction between the cause of action for a legal remedy versus the equitable cause of action for an injunction.  It's a remedy. It's a remedy for an underlying cause of action. Correct. Now, if you don't have any underlying causes of action, where do you get your right to have an injunction? You get your right as a landowner to prevent the creation of a prescriptive easement within the 20-year period. If the judge dismisses your complaint on the statute of limitations ground, how's there anything left? If it's dismissed, it's dismissed. Well, I think that we would still have the remedy to keep that easement from becoming prescriptive. So you're saying that the dismissal is not a complete dismissal? It is not a... It wouldn't be a dismissal. If you lose on the statute of limitation, wouldn't the complaint be dismissed? No, sir, it would not. It would not be dismissed. To the extent that we requested for injunctive relief, we believe that that injunctive relief is contemplated... Survives the dismissal. It absolutely does. You're saying that part of the complaint survives the statute of limitations defense? Absolutely, Judge. And that's borne out in Virginia case law, the Sonoma case, the Nishian case, Mobley, 17, Inc. are four cases specifically that address the issue of when you overburden an easement, what do you do? In fact, that isn't the issue. The issue is when your underlying cause of action is dismissed. Mobley is not a statute of limitations case. When it's dismissed, what is the legal, what is the cause of action to which the injunction attaches? The injunction is not a sudden cause of action. It's a remedy that gives effect to a cause of action. When your cause of action has been dismissed... But the cause of action with regard to the... Your trespass action was dismissed. The recovery of damages based upon the trespass action may be dismissed. He didn't just do that. He dismissed the whole action because trespass is on the law side, and while there may be an equitable remedy sometimes if you have the trespass action, you still have to have a cause of action. And the cause of action in this case is gone. I would suggest the Sonoma, Nishian, Mobley, 17, none of these cases deal with the specific... But what did the judge do here? He dismissed it. He dismissed the whole case. He dismissed it. So, therefore, why wouldn't your injunction argument be gone? Because we believe that he... Moved. It's nothing to attach to. There's no complaint. The complaint's been dismissed. The complaint with regard to legal damages may have been dismissed. I thought everything was dismissed. The complaint was dismissed. It absolutely was. And we believe that it was absolutely dismissed. How is there a right to an injunction if there's no complaint? We believe it was dismissed based upon an incorrect application of the law. Would you want us to reinstate some part of it? You haven't asked for that relief here, have you? We are asking that the court reverse... Pardon? We are asking that the court reverse the matter and send it back, certainly. You're asking us to say that the statute of limitations doesn't bar it. Yes. All right. If we were to rule that Judge Jones was right on the statute of limitations, isn't that the end of the case? It is not, Judge. We believe... Well, that's exactly what I was getting at. Right. But the complaint, he ruled that the statute of limitations barred it, and he dismissed the complaint. He had ruled that we did not state... And if we affirm that, there's nothing to attach your injunction request to. He had stated that, and I can appreciate the court's argument, but I would still... I'm not trying to make the argument. I'm just trying to understand it. Well, the statement that the court's made, I appreciate that, but I would again suggest that even though the underlying continuing trespass legal action may be time-barred, there still is a continuing trespass that you can seek equitable damage for up to 20 years, at which point there is the creation of a restricted reason. Well, maybe you'd have a right to go back and bring another complaint on the continuing trespass or something. That would be what the... I don't know. I would suggest that... You're saying the water's still in there, and we want it out. It is, and I would suggest the plaintiffs shouldn't have to bring a separate legal action. What the plaintiffs are entitled to is for the trial court to properly apply the law as articulated by Sneed, Breeden, and LaFaisa, and specifically with regard to any number of cases that I've indicated already that speak of the right to injunctive relief when there is a continuing easement that constitutes an overburdening of an existing easement. But if your complaint goes away, wouldn't you... go at least to the state court and file what used to be a bill of complaint in the chancery and ask for an injunction? We may very well be able to do that. However, we're before... We filed in the Western District Court, and we believe that the elimination of the remedy of injunction was done so based upon a misapplication of the law by Judge Jones, and specifically, we're not required to prove damages for an inadequate remedy at law, and that's indicated in Breeden's, Noma's, Billings... Don't you have to, in an injunction, advance a risk of harm, a future risk of harm to be prevented? No. And specifically, Breeden, Sneed, and LaFaisa real property interests are deemed irreparable, be it sentimental or... Well, they can be. That's where I think you're misstating Virginia law. You still have to go through the normal injunction examination to see whether or not there can be a remedy at law, but there can be, in any state, separate considerations that entitles the chancellor, where there is a continuing trespass, to enter an injunction notwithstanding that. But it's not a requirement. It simply sets up standing and the authority that the chancellor can choose or not to exercise. Right. Well, I would state that... And there may be a difference between a trespass where somebody daily crosses your property and tomorrow is going to cross it again because that was the habit and you want to stop that. That is one type of ongoing trespass, but when you cut down the tree and it falls onto your property and that can be remedied by just removing the tree and paying the damages for the removal, your argument is that that's a continuing trespass. I'm not sure that's the same as the type of trespass where somebody's crossing your property daily and may need to be enjoined for future similar conduct. Here the conduct is done. It was completed in 2003 and there's nothing more to be enjoined. But it is continuing to the extent that the water remains under my client's property. My client wants to be able to remove it. But when Judge Jones dismissed the complaint, did he dismiss it in part or in whole? He dismissed it in whole. So then there's no continuing trespass claim left. It was dismissed too. You don't ask us to reinstate the continuing trespass claim or a continuing trespass claim, I don't think. We believe that the court's actions downstairs specifically misapplied the law. Misapplied the laws articulated by the Levisa case, Breeden, and Steed, and failed to recognize that the right of injunction applies not only where there are legal damages that may be available, not only where there... Well, there has to be a threat of harm in the future to prevent. I mean, the Supreme Court has articulated this several times in the nature of injunctive relief. But why don't we continue this on your rebuttal? We've gone through the red light for quite a while here. Yes, sir. Thank you. We understand what you're arguing at this point. Mr. Neal, we'll hear from you. Thank you, Your Honor. May it please the Court, Jim Neal on behalf of the appellees. I'd like to take 15 minutes and address the circle issue, if I may, of the statute of limitations. Could you address just at the outset the permit issue? Yes, sir. And why? And the question of what's the relationship with the state-issued permit and the federal CERCLA? I'll be happy to, Your Honor. CERCLA does not operate where a discharge is performed pursuant to a federally permitted activity. Federally permitted activity is defined in 9601 subparagraph 10. That definition includes state-issued permits to which federal agencies delegate their authority. Virginia is one of 44 states to which the United States Environmental Protection Agency delegates section 402 of the Clean Water Act permitting authority. Under that delegation, the Virginia Department of Environmental Quality may issue NPDES permits, National Pollution Discharge Elimination System permits. The permit in this case was an NPDES permit. It is branded as such in the newspaper. It is branded as such on the permit application. It is branded as such on the revision issued by the state agencies. Therefore, it qualifies under the definition of 9601 subparagraph 10. And as we know from 9607 subparagraph 7 in CERCLA, a federally permitted release is not subject, not cognizable, not redressable under CERCLA. To the extent it may be challenged, it may be challenged under state law and only state law. That's an enormous compromise reflecting the importance of comity in the enactment of CERCLA. And to disregard that here would be to rewrite the law. So you're saying this was a federally permitted release? Exactly, Your Honor. It calls delegation to the state. Exactly, Your Honor. Therefore, it's outside of CERCLA. Ironically, the plaintiffs want to reach into CERCLA, grab 9658, its discovery rule, pull it out, brush away the Virginia discovery rule, 8.01230. But 9658, no court anywhere has ever said you can pluck out 9658, that discovery, and use it where CERCLA can't be used. Where CERCLA can't be used. Cannot be used, correct, Your Honor. If CERCLA could be used but wasn't used, do you qualify that? You might have the possibility if you satisfy that. There's legal authority for that proposition. There absolutely is, Your Honor. There's really good legal authority, Fourth Circuit legal authority, for the proposition that the appellees advance. The first United Methodist Church case, Judge Hall, Judge Butzner, and forgive me, I forget the third member of the panel, said that 9658 can't operate where CERCLA can't operate. We're not going to give you, plaintiff, the benefit of CERCLA discovery rule if CERCLA wouldn't redress the injuries of which you complain. That was an asbestos remediation case. CERCLA does not apply to asbestos remediation. This Court, in First United Methodist Church, said therefore 9658 is unavailable. The Fifth Circuit said the same thing in Barnes v. Coughlin. What is the scope of that permit in this case? Mrs. Farabee suggested that the permit didn't cover the discharge in this case. I don't understand the genesis of that statement, Your Honor. I never understood it until her statement right now. I didn't see that she had raised that, but I understood what your response to that was. The entire purpose of the permit was to obtain a dewatering system to move water from the Buckhannon mine to the Beatrice mine. That's the only reason those pipes were built. That's the only reason those wells were put in place. That's the only reason that permit was obtained. If it wasn't to move water from Buckhannon to Beatrice, the entire endeavor was a waste of time and energy and effort. That is the NPDES permit, which was the subject of the most robust debate possible. What was the date of that permit? That was, forgive me, Your Honor, April of 1994. I don't recall a specific date, I believe. It may have been March 7th, 1994. The Court's invested a great deal of time. I think it understands the arguments very well. I'm happy to address other questions or concerns you may have. But if we were to assume, just for purposes of argument, that there was not a permitted release, which is what I understood opposing counsel's position, as I understand the law under Circle I, even if you were to assume that the water was a hazardous substance, a plaintiff to prevail under Circle I and receive the benefit of the discovery rule has to show some damages. And as best I can determine from opposing counsel's argument, the damages they allege are simply the act of trespass. Is there some other damage debate that occurred in the District Court other than trespass? No. The Court is correct. In order to use 96-58, you have to satisfy 96-58. So you need to demonstrate either personal injury or property damage caused by the exposure to hazardous substances released from the defendant's facility. Does Circle I provide a remedy for property damage or is it a remediation cost? It's a remediation cost, Your Honor. That's what I thought it was. So in this case, I have belts and suspenders and a second belt. The suspenders are the permitting issue. The first belt is the absence of damage caused by exposure to a hazardous substance. And the third is the absence of the remediation cost. The District Court correctly identified all three as bars to the application of CIRCLA and therefore bars to the preemption of 8.01230 by the CIRCLA discovery rule. The Court's question about spitting on property is exactly correct. The same scenario, if water were placed in tankers and parked on the plaintiff's surface property, it would have been identical. You might have a hazardous substance, you might have a trespass, but you don't have a CIRCLA cause of action and you can't import the CIRCLA discovery rule given the fact. And even if you could, Your Honor, the plaintiff's knew or should have known under the governing law here. Ironically, the plaintiffs reach out to grab 96-58. They want to pull the text of the statute into their state law causes of action, but they want you to ignore all of the case law about the objective reasonableness of constructive knowledge that's attendant to that statute. The Boeing case from the Ninth Circuit makes it very clear. If the information is knowable, if it is available in the public record, then the plaintiff is charged with that information. And there's no doubt about here about what the public record looked like. And in fact, the plaintiffs conceded in their papers below that the water transfer was knowable, that it was a matter of the public record, and that it, quote, could have been known. Those are the points, Your Honor. Absent questions or comments from the court, I'd like to yield the remainder of my time to my partner, Mr. Blank, to address the injunction issue. All right. Thank you. Thank you, Your Honor. Mr. Blank. Your Honor, if it may please the court, I'll be very brief. I think the court asked the appropriate questions. There are two reasons that no clearer exists with regard to Judge Jones' decision in dismissing the injunction. The first is there's no cause of action. It's a remedy, and it's gone. And therefore, you can't have it resurrect itself if the statute of limitations apply. On the flip side, if there's a remedy at law, then there's no injunctive relief. And Judge Agee went through the litany of the reasons that a court goes through, whether it was LaVizor or any other court in Virginia, and Judge Jones did it here in this opinion. And those two reasons, again, the injunctive relief and the alternative can't exist. And for those reasons, and for the reasons set forth by my colleague, Mr. Neal, I ask this court to affirm the lower court's decision. I'll be glad to answer any other questions, but I think the court asked the questions and has a good idea of both our answers and the issues in this case. I'll be glad to answer any other questions. Otherwise, we'll yield to that. All right. Thank you, Mr. Blank. Thank you. Mr. Herbie. I just want to help the court with a few key points. Going back and looking at this, when this mine first got a permit, they got a joint permit. One part of it was for service disturbance. One part of it was for water discharges. They both fall under the same permit, same umbrella. They're called the same thing on the permit forms, but they're for two different actions. And any time a coal mine comes in and asks that there be, you know, either another surface disturbance or another discharge somewhere, they have to revise that permit. The revision here for this discharge was for surface disturbance only. I'm sorry. Let me grab this. I forgot it. It starts at page 1759 of the exhibit is where the application starts. But I just want the court to understand this is like ‑‑ I explained it in our brief. It's kind of like two twins in a baby stroller. You know, you've got ‑‑ they're under the same umbrella, but they're for different things. And any time you change something in that permit, you have to have a revision. There was no revision for this discharge. And there's no NPDES permit. Even though the form says that it's for both of these type of disturbances, they didn't file for a revision of their water discharge permit. So I hope that helps in your understanding of ‑‑ But it doesn't help too much. I can tell you why. Because I asked you some very pointed questions about the permitting process and the suggestion that there was this coordination between federal and state, which I'd always assumed. That's the same way under the Coal Mine Act. And there's a shared jurisdiction. If this was a federally authorized permit, then the question becomes if you don't like the permit or you don't like the activity, you oppose it. And there's a whole process for doing that. And in this case, the permit was to discharge water. They didn't use pipes over land, but they were discharging the water into that Beatrice Mine under the permit. And that never changed. They just ended up doing it through drilled holes instead of through the pipe overtop. And your argument is now that that now renders illegitimate, the permit that was issued. Is that the argument? That's not the argument. What's the argument? The permit that was issued was not for a water discharge. You have to have an NPDES permit for a water discharge. This was not an NPDES revision. It was to dewater their mine and put it into the Beatrice Mine, right? Yes, it was. But they're not discharging to surface waters of the United States. They did the only reason for this revision. What's the point you're getting to here? The point I'm getting to is this is not a federally permitted release under these definitions, under the CERCLA definitions. Let's say I'm missing your point, because if they were authorized to move the water from Buchanan Mine to the Beatrice Mine under this permit, that's exactly what they did. They were authorized to build a pipe to move the water. It's not a release into the surface waters. Right, but it's not a release into the surface waters. That is where the definition of it fits. This was released into the mine. It was released into our client's properties, yes. Well, it was permitted, though. The revision was for a surface. They didn't talk about a surface of your land, did they? No. Okay. Well, that isn't what the permit anticipated, either. Let's say I'm missing it, and I would love to understand it. If this were an MPDES permit, there would be evidence. Don't say if. It wasn't an MPDES? No, it was not. It was not. I think that's where you're going. Where's the permit, you say? I don't have it. It starts at page 1759. All right, we'll take a look at that. It's a very long exhibit. That's the application. How about the permit itself? Is it labeled as an MPDES? It's all in the file. How is it labeled at the top, the permit? I think it does have the joint application there, the joint form. What's it labeled at the top? So if the permit says MPDES on it, does that mean your argument just has to go away? No, and that's what I was trying to explain. Just tell me what the permit says at the top. Does it say that? I don't have it right here in front of me. Would you like me to give you a letter on that? Do you have the page number of the permit? I have a page number of the permit application. No, that's the permit is what you're asking about. No, I don't have it right here in front of me. Okay, but you're saying it's in there. It's in there. And you're saying it does not say MPDES? I'm saying it says two things in a joint application. No, I'm asking you to answer my question. You're saying that the permit does not say it's an MPDES permit? No, I think it does. I think. I don't want to say for sure, but I'm trying to explain that it's… You just said to me a minute ago that it's not an MPDES permit. It's not. If it's labeled as such, what is it? It has a slash DMLR or permit. I mean, it falls under the same umbrella. But what matters is what's in the application. Isn't it authorized by CERCLA? That permit? No. No, it's not. It's not a federally permitted release. The permit's not authorized by CERCLA. Do you dispute the fact that the state is authorized to issue this permit under CERCLA and to function, therefore, as a CERCLA permit? Yes, I do dispute that. How do you handle a 960110? I'm not sure, Your Honor. That's the definition of a permit under CERCLA. Which incorporates the state permits when authorized by CERCLA? And in this case, Virginia was authorized, they say. Do you dispute that? I dispute that this was a permit authorized by CERCLA, yes. If there's nothing in the record to show, if this was an NPDES permit, they would have had to. It would help a lot if you were able to point this out instead of just giving your ideas about this. It is in my brief. I've cited all this in my brief. No, no, I'm talking about from the record. Yes. We'll take a look at it. We have the appropriate citations in the brief for all of that. There's nothing in the record that shows that they filed any NPDES documentation to show that they were appropriately discharging this. If it was an NPDES permit, all of these things would have been in the record. It's either was or it wasn't, and you're saying it wasn't. It wasn't. Okay. And I gather then all, if it was an NPDES permit, it's authorized by CERCLA, and the whole discharge is authorized, and it seems to me you wouldn't have a CERCLA claim so as to authorize the use of the discovery rule. Do you agree with that? If it was a federally permitted release, you're right. Okay. All right. We'll come down and re-counsel. We'll try to sort this out with a little more study.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee